**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-30429 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-02037-EFS-1 |
| v. | |
| HORSLEY THEROW SOHAPPY, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted August 5, 2010
Seattle, Washington

Before: CANBY, THOMPSON and BERZON, Circuit Judges.

Horsley Therow Sohappy appeals the district court's denial of his motion to suppress evidence law enforcement officers seized during the search of a residence. We reverse.

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

The officers did not have probable cause to believe that Sohappy was living at the searched residence. The single failed attempt to locate Sohappy at his listed residence was insufficient to suggest he was living elsewhere. *See United States v. Howard*, 447 F.3d 1257, 1266 (9th Cir. 2006). That Sohappy failed to report to his probation officer the morning after he was released does not establish probable cause as to where he was living.

Second, the information provided by Diaz during his post-arrest interview was only minimally pertinent. Diaz was jailed two days after Sohappy was released. So he could have known, at most, that Sohappy spent two nights at the searched residence. Moreover, in light of their history of altercations, Diaz had good reason to falsify information about Sohappy. Subsequent corroborating information confirmed only that Sohappy had visited the residence, not that he was *living* at the residence.

Third, that Officer Hisey had previously contacted Sohappy at the searched address is not evidence of residency there. The record does not indicate how recently the contact occurred, and Sohappy had subsequently provided updated contact information. *See Howard*, 447 F.3d at 1267 ("[T]he mere fact that [an officer] had visited [the defendant] there in early February was not sufficient to create probable cause that [the defendant] *lived* there at the end of March.");

*Cuevas v. De Roco*, 531 F.3d 726, 734 (9th Cir. 2008) (holding out-of-date residency information did not support a probable cause determination when more recent records indicated the defendant lived at a different residence).

Fourth, Luna, Mora's mother, told Officer Nelson that Sohappy was a friend of her family and had been at the residence the night before, but was *not* staying there. Suspicion that Luna's denial is not credible because of her relationship to Sohappy requires an inference that Luna understood that an admission of Sohappy's residency at the address would be more incriminating than her admission that Sohappy was recently present at the residence. While not an impossible inference, it is at least an unlikely one, absent some reason to believe Luna was quite legally sophisticated.

Finally, that Mora ultimately admitted Sohappy was inside the residence at the time of the search speaks to Sohappy's presence at the address, not his residency there. Evidence of mere presence at a residence, standing alone, is insufficient to establish probable cause that an individual under community supervision is living at the residence. *See Howard*, 447 F.3d at 1267–68.

We also conclude that the search of the residence was not justified by "reasonable cause" to believe that Mora violated one of her community supervision conditions. Mora's refusal to identify the individual inside the residence was not

-3-

necessarily a failure to "abide by [an] . . . instruction," as her supervision agreement required her to do. The officer's inquiry as to who was present in the residence did not itself constitute a "verbal instruction." Ordinarily, when asked a question, we may decline to answer it. That Mora was a parolee does not change this basic linguistic convention. Absent an explicit directive to respond, her refusal to answer did not constitute a failure to abide by an instruction.

Any doubt as to whether to interpret the interaction with the officer as including an instruction to answer the question posed is resolved by the Fifth Amendment concerns raised by the government's proposed interpretation of Mora's supervision condition. As Sohappy was in violation of his community custody conditions and possibly in possession of a firearm, a response from Mora posed a risk of self-incrimination for violation of various state criminal laws. *See, e.g.*, Wash. Rev. Code §§ 9A.76.050; 9A.76.080 (prohibiting harboring or concealing, with the intent to delay apprehension, someone being sought for violation of community supervision); Wash. Rev. Code § 9.41.040 (prohibiting someone previously convicted of a felony from having a firearm in her control). Accordingly, requiring her to identify the individual inside the residence could constitute a state practice improperly penalizing Mora's exercise of her Fifth Amendment privilege. *See Minnesota v. Murphy*, 465 U.S. 426, 435 (1984);

-4-

*United States v. Saechao*, 418 F.3d 1073, 1075 (9th Cir. 2005). "[T]he State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Murphy*, 465 U.S. at 438. We therefore decline to interpret Mora's supervision condition as requiring her to answer the officer's questions regarding Sohappy.

Nor could the officer's mistaken interpretation of Mora's supervision agreement justify the search. An erroneous understanding of the law cannot establish reasonable cause to believe Mora violated a supervision condition. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004).

We conclude that Officer Nelson did not have "reasonable cause" to believe Mora violated a supervision condition.

The judgment of the district court is REVERSED and the plea of guilty is VACATED.